UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>          -against-<br><br>OLUWASEUN ADELEKAN et al.,<br><br>                    Defendants. | 19 Cr. 291 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Defendants are charged in a six-count indictment in connection with their alleged participation in a scheme to defraud businesses and individuals using email scams designed to trick those victims into wiring money to bank accounts that the Defendants controlled.  Defendant Oluwaseun Adelekan moves <u>in limine</u> to (1) sever his case from that of his co-defendants and to (2) stay his trial on the basis that the present jury panel selection procedures violate his Sixth Amendment rights and the Jury Selection and Service Act of 1968.[1]  Defendant Abiola Olajumoke moves <u>in limine</u> to preserve his objections to the

---

[1] (Notice of Motions <u>in Limine</u>, dated Sept. 13, 2021 [dkt. no. 303]; Memorandum of Law in Support of Oluwaseun Adelekan's Motions <u>in Limine</u> ("Adelekan Mot."), dated Sept. 13, 2021 [dkt. no 303-1]; <u>see also</u> Government's Opposition to Defendants' Motions <u>in Limine</u> ("Gov. Opp."), dated Sept. 23, 202 [dkt. no. 326].)

1

introduction of certain evidence.[2]  Certain of their co-defendants join in each of these motions.[3]

For the reasons that follow, Adelekan's motion is <u>DENIED</u> and Olajumoke's motion is <u>DENIED</u>.[4]

## I.   Background

Defendants Oluwaseun Adelekan, Olalekan Daramola, Solomon Aburekhanlen, Gbegna Oyeneyin, Abiola Olajumke, Temitope Omotayo, Bryan Eadie, Albert Lucas, Ademola Adebogun, Lucas Ologbenla, Adewole Taylor, and Curlten Otidubor (collectively, "Defendants") are charged in a six-count indictment for allegedly using false and misleading representations and omissions, including via email and text message, to induce victims to wire a total of more than $3.5 million to Defendants and other members of the scheme.  (<u>See generally</u> Fourth Superseding Indictment, [dkt. no. 296].)

---

[2] (Notice of Motions <u>in Limine</u> to Preclude Categories of Evidence the Government Has Not Yet Produced, dated Sept. 13, 2021 [dkt. no. 299]; Memorandum of Law in Support of Defendant Abiola Olajumoke's Motions <u>In Limine</u>, dated Sept. 13, 2021 [dkt. no. 301]; <u>see also</u> Declaration of Joshua L. Dratel, dated Sept. 13, 2021 [dkt. no. 300].)

[3] (<u>See</u> dkt. nos. 313 (Defendant Adewole Taylor joining in both motions), 314 (Defendant Gbenga Oyeneyin joining in Olajumoke's motion), 315 (Defendant Curlten Otidubor joining in both motions), 316 (Defendant Albert Lucas joining in both motions).)

[4] The Court will rule by separate order on the Government's affirmative motions <u>in limine</u> (<u>see</u> Government's Motion in Limine ("Gov. Mot."), dated Sept. 13, 2021 [dkt. no. 304]).

Count one charges Defendants with conspiracy to commit wire fraud.  (Id. ¶¶ 1-6.)

Count two charges Defendants with conspiracy to commit money laundering.   (Id. ¶¶ 7-10.)

Counts three through six charge certain Defendants with aggravated identity theft:

- Count three charges defendants Adelekan and Eadie with aggravated identity theft for unlawfully using another person's social security number in attempting to obtain proceeds of a wire transfer.  (Id. ¶ 11.)
- Count four charges defendants Olajumoke and Adebogun with aggravated identify theft for unlawfully using the name, place of business, and driver's license number of another person in attempting to obtain proceeds of a wire transfer.  (Id. ¶ 12.)
- Count five charges defendants Omotayo and Eadie with aggravated identify theft for unlawfully using the name and employer of another person in attempting to obtain proceeds of a wire transfer.  (Id. ¶ 13.)
- Count six charges defendant Oyeneyin with aggravated identify theft for unlawfully using a means of identification of another person in attempting to obtain proceeds of a wire transfer.  (Id. ¶ 14.)

## II.  Legal Standard

"The purpose of a motion in limine is to allow a court to rule on the admissibility of potential evidence in advance of trial."  Laureano v. City of New York, No. 17 Civ. 181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021) (quoting Gucci Am., Inc. v. Guess?, Inc., 858 F. Supp. 2d 250, 253 (S.D.N.Y. 2012)).  A court should exclude evidence on a motion in limine only when it is "clearly inadmissible on all potential grounds."

United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164-65
(S.D.N.Y. 2006) (citation omitted).  "Because a ruling on a
motion in limine is 'subject to change as the case unfolds,'
[the] ruling constitutes a preliminary determination in
preparation for trial."  United States v. Bowen, 511 F. Supp. 3d
441, 446 (S.D.N.Y. 2021) (cleaned up).

### III. Discussion

Two Defendants, Adelekan and Olajumoke, have filed pre-
trial motions.  Adelekan moves to (1) sever his case on the
basis that he will be prejudiced if he is tried with his co-
defendants and to (2) stay trial on the basis that this
District's jury plan violates his Sixth Amendment Rights.
Olajumoke moves in limine to preserve certain objections.  The
Court addresses the motions in turn.

### A. Adelekan's Motions in Limine [dkt. no. 303]

#### a. Motion to Sever

##### i. Applicable Law

Pursuant to Fed. R. Crim. P. 8(b), two or more defendants
may be charged in the same indictment or information "if they
are alleged to have participated in the same act or transaction
or in the same series of acts or transactions constituting an
offense or offenses."  Fed. R. Crim. P. 8(b).  In analyzing
joinder under Rule 8(b), courts must "apply a commonsense rule
to decide whether, in light of the factual overlap among

4

charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice." United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation marks and citation omitted). With conspiracy charges, "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder." United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988). "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by Co-defendants, is admissible against the defendant." United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998). These rules reflect "a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system, as they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. O'Connor, 650 F.3d 839, 858 (2d Cir. 2011) (internal quotation marks and citations omitted).

Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses or defendants in an indictment, information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Rule

14 does not require severance even if prejudice is shown;
rather, it leaves the tailoring of the relief to be granted, if
any, to the district court's sound discretion." Zafiro v.
United States, 506 U.S. 534, 538-39 (citing United States v.
Lane, 474 U.S. 438, 449, n. 12 (1986); Opper v. United States,
348 U.S. 84, 95 (1954)).  Severance should be granted "under
Rule 14 only if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or
prevent the jury from making a reliable judgment about guilt or
innocence." Id. at 539; see also United States v. Cacace, 796
F.3d 176, 192 (2d Cir. 2015).  "Circumstances that may warrant
severance include allowing the jury to consider evidence that
otherwise would not be admissible if the defendant were tried
alone, or conversely, barring essential exculpatory evidence
that would be admitted if the defendant were tried alone."
United States v. Sezanayev, No. 17 Cr. 262, 2018 WL 2324077, at
*2 (S.D.N.Y. May 22, 2018) (citing Zafiro, 506 U.S. at 539).

"Differing levels of culpability and proof are inevitable
in any multi-defendant trial and, standing alone, are
insufficient grounds for separate trials.  Even joint trials
involving defendants who are only marginally involved alongside
those heavily involved are constitutionally permissible." United
States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (internal
quotation marks and citations omitted).  "[T]he principles that

6

guide the district court's consideration of a motion for
severance usually counsel denial." United States v. Rosa, 11
F.3d 315, 341 (2d Cir. 1993); see also United States v. Tuzman,
301 F. Supp. 3d 430, 440 (S.D.N.Y. 2017).  "'[L]ess drastic
measures [than severance], such as limiting instructions, often
will suffice' to cure any risk of prejudice and permit joinder."
United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) (quoting
Zafiro, 506 U.S. at 539).

"In deciding a motion for severance, a court must consider,
among other factors: (1) possible conflicts between defense
theories, (2) the possibility that the moving defendant will be
prejudiced by a joint trial, and (3) the complexity of a joint
trial, including the number of defendants, the estimated trial
length, disparities in proof offered against the various
defendants, and the defendants' differing roles in the alleged
criminal schemes.  United States v. Hameedi, No. 17 Cr. 137
(JGK), 2017 WL 5152991, at *3 (S.D.N.Y. Nov. 3, 2017) (citing
United States v. Guillen-Rivas, 950 F. Supp. 2d 446, 457
(E.D.N.Y. 2013)).

### ii. Application

Severance of Mr. Adelekan's trial pursuant to Federal Rule
of Criminal Procedure 14(a) is not warranted.

Adelekan argues that the Court should sever his trial
because he anticipates that he and his co-defendants will put on

conflicting trial defenses.  Mr. Adelekan says that he expects

at least one of his co-defendants will claim that he was just

following Mr. Adelekan's orders without knowing that he was

participating in illegal activity.  (Adelekan Mot. at 3-4.)  Mr.

Adelekan contends that such a defense would antagonistic to his

own defense that the funds deposited into his business account

were transferred to him by individuals, including some co-

defendants, and that he did not have reason to be suspicious of

the transferors' motives.  (Id.)

As an initial matter, these defenses are not mutually

exclusive.  Although severance may be warranted where defendants

in a joint trial assert mutually antagonistic defenses, see

United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003), for

severance to be warranted on this basis "[t]he jury, in order to

believe the core of testimony offered on behalf of one

defendant, must necessarily disbelieve the testimony offered on

behalf of his codefendant."  United States v. Potamitis, 739

F.2d 784, 790 (2d Cir. 1984)(internal quotation marks and

citations omitted).  As the Government points out, the jury

could believe both Adelekan's contemplated defense--that he

believed he was following orders from others in Nigeria and that

the money was received into his account from legitimate sources

and for legitimate purposes--and the purported defenses of his

co-defendants--that that they were acting at Adelekan's

direction under the belief that the transactions were
legitimate--without necessarily rejecting one or the other.
Unlike here, "[d]efenses are mutually antagonistic when
accepting one defense requires that 'the jury must of necessity
convict a second defendant.'" Yousef, 327 F.3d at 151 (quoting
United States v. Cardascia, 951 F.2d 474, 484 (2d Cir. 1991)).
Although Adelekan may try to point the finger at his co-
defendants and his co-defendants may try to do the same, "[t]he
mere fact that codefendants seek to place the blame on each
other is not the sort of antagonism that requires a severance."
United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990)
(citing United States v. Casamento, 887 F.2d 1141, 1154 (2d Cir.
1989)).  Accordingly, the Court finds that the proffered
defenses are not mutually antagonistic and thus severance is not
warranted on this basis.

In any event, because "[i]t is well established that a
court can cure prejudice caused by allegedly antagonistic
defenses through the use of jury instructions," Hameedi, 2017 WL
5152991, at *5 (citing Yousef, 327 F.3d at 151-52; Salameh, 152
F.3d at 116-17 & n.3; and United States v. Sattar, 272 F. Supp.
2d 348, 380 (S.D.N.Y. 2003)), the Court will instruct the jury
in this case to consider the evidence against each defendant
separately.

Further, the Court rejects Adelekan's arguments about so-called "spillover prejudice." "'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." Salameh, 152 F.3d at 115 (internal quotation marks and citations omitted). Adelekan argues that a joint trial would permit introduction of emails and text messages between Mr. Adelekan and his co-defendants that would not be admissible if Mr. Adelekan were tried alone. (Adelekan Mot. at 4.)

The Court does not find substantial prejudice would result if the trials are not severed. Evidence adduced against one alleged co-conspirator is "neither spillover nor prejudicial" if it "would be admissible at a separate trial of the moving defendant" an act of a co-conspirator in furtherance of a conspiracy "because of the alleged conspiratorial nature of the illegal activity." United States v. Rosa, 11 F.3d at 341; see also United States v. Ramos, 346 F. Supp. 2d 567, 572 (S.D.N.Y. 2004) ("Prejudicial spillover warranting severance is, in general, 'an unlikely occurrence when all the defendants are charged under the same conspiracy count.'"). At this preliminary stage, there is sufficient indication that the evidence offered against Adelekan would be admissible against him whether he is tried separately or together with his co-

defendants.  The test for the admissibility of statements by co-conspirators that would be applied in a separate trial of Adelekan requires the Court to find, by a preponderance of the evidence, that "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014) (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990)); see also Bourjaily v. United States, 483 U.S. 171, 176-81 (1987).  In this analysis, "the contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh, 552 F.3d 93, 137 (2d Cir. 2008) (citing Fed. R. Evid. 801(d)(2)(E) (2008)).

    The Court is satisfied that the representations made by the Government at this stage--particularly with respect to Defendants Adelekan and Omotayo, who will be tried together--satisfy these three criteria by at least a preponderance of the evidence.  For example, the Government represents in its opposition to Adelekan's motion to stay, (Gov. Opp. at 6), in which it incorporates arguments about co-conspirator statements

from the Government's own motion in limine, that it will
introduce evidence that a co-conspirator posing as a project
manager for a purported counterparty of one of the victim
companies requested that an employee of the victim company remit
payment to a bank account maintained by members of the
conspiracy, (see Gov. Mot. at 9-10).  The Government represents
that defendants Omotayo and Adelekan exchanged a screenshot that
captured a portion of the email exchange in which the employee
of the victim confirmed to these defendants' co-conspirators
that the victim company had remitted funds for the services.
(Id.)  Based on the preliminary representations in the
Government's brief, it appears that there is a preponderance of
evidence showing that there was a conspiracy, that Adelekan and
Omotayo were members of the conspiracy, and that the Government
could admit statements between Adelekan, Omotayo, and their co-
defendants whether they were all tried together or separately.
Accordingly, there is little risk of spillover prejudice.

Moreover, as with Adelekan's assertions about antagonistic
defenses, he has not shown, considering the extreme
inefficiencies associated with severing his case, how a limiting
instruction could not address the risk of spillover prejudice.
See United States v. Ramos, 346 F. Supp. 2d 567, 575 (S.D.N.Y.
2004) ("[L]imiting instructions to the jury have emerged as the
preferred device for curing any prejudicial spillover that may

12

result from a multi-defendant, multi-count trial." (quoting
United States v. Santiago, 174 F. Supp. 2d 16, 22 (S.D.N.Y.
2001)).

Accordingly, the branch of Mr. Adelekan's motion seeking to
sever his case is DENIED.

### b. Adelekan's Motion to Stay

Mr. Adelekan contends that the Court should stay his trial
because the jury selection procedures in this District presently
cannot guarantee him a petit jury drawn from a fair cross-
section of the community, in violation of the Sixth Amendment
and the Jury Selection and Service Act of 1968 ("JSSA").
(Adelekan Mot. at 5-10.)

### i. Applicable Law

### 1. Sixth Amendment

"The Constitution's Sixth Amendment guarantees criminal
defendants 'an impartial jury of the State and district.'"
United States v. Walsh, 884 F. Supp. 2d 88, 90 (S.D.N.Y. 2012)
(quoting U.S. Const. amend. VI). Accordingly, the Sixth
Amendment promises "a criminal defendant a jury selected from a
fair cross section of the community." See United States v.
Rioux, 97 F.3d 648, 654 (2d Cir. 1996) (citing Taylor v.
Louisiana, 419 U.S. 522, 530 (1975)).

To establish a prima facie violation of Taylor v.
Louisiana's fair cross section guarantee, a defendant has the

burden of showing that (1) the excluded group is "distinctive"; (2) "representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community;" and (3) the "systematic exclusion of the group in the jury-selection process" is the reason for such under-representation. Duren v. Missouri, 439 U.S. 357, 364 (1979). Upon a defendant's making of a prima facie case, the burden shifts to the Government to show that "attainment of a fair cross section [would] be incompatible with a significant state interest." Id. at 368. It is not necessary to show discriminatory intent. United States v. Biaggi, 909 F.2d 662, 677 (2d Cir. 1990).

### 2. Jury Selection and Service Act of 1968

The JSSA provides that "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. As with a Sixth Amendment challenge, a court must apply the three-part test from Duren v. Missouri in assessing a defendant's statutory fair cross-section challenge under the JSSA. See United States v. LaChance, 788 F.2d 856, 864 (2d Cir. 1986). A JSSA challenger must assert a "substantial failure to comply" with one of the provisions of the JSSA, as "[m]ere

14

technical violations" are insufficient to sustain a claim.  Id. at 870 (cleaned up).

### ii. Application

#### 1. Sixth Amendment Claim

Under the JSSA, federal district courts must "devise and place in operation a written plan for random selection of grand and petit jurors."  28 U.S.C. § 1863(a).  The Court therefore references the Southern District of New York's jury plan.

The Jury Plan for the Southern District of New York (the "Plan") has been in place since February 13, 2009.  (Ex. A to Gov. Opp., Amended Plan for the Random Selection of Grand and Petit Jurors in the Southern District of New York ("Jury Plan") [dkt. no. 326-1], at 10.)  Under the Plan, the Clerk of Court maintains Master Jury Wheels: one for the Manhattan courthouse and one for the White Plains courthouse.  (Id. at 6.)  "The Master Wheel for the Manhattan courthouse shall include residents from five counties, consisting of New York, Bronx, Westchester, Putnam and Rockland; and the Master Wheel for the White Plains courthouse shall include residents from six counties, consisting of Westchester, Putnam, Rockland, Orange, Sullivan and Dutchess."  (Id. at 4.)  Every four years, these wheels are filled with names of people randomly selected from voter registration lists in the District proportionate to the number of registered voters in that county.  (Id. at 2.)  The

15

Clerk of Court draws from the Master Wheels, once or twice a year (or more if necessary), names of people to whom questionnaires are mailed to discern their qualifications and availability for jury service. (Id. at 4.) Once a month (or more or less, depending on need), the Clerk of Court randomly draws names from a Qualified Jury Wheel to meet grand and petit juror requirements for the month, and those persons are summoned for jury service (Id. at 5-6.)

As a result of the COVID-19 pandemic, the District additionally has added a supplemental questionnaire to the usual questionnaire sent with the summons to potential jurors ("Supplemental Questionnaire").[5] The Supplemental Questionnaire contains nine questions, which asks potential jurors about their possible COVID-19 symptoms as well as questions regarding a potential juror's wish to be excused from jury service on the basis of a delineated list of COVID-19-related burdens. (See id.)

Applying Duren's three factors, Adelekan argues that the Plan will deny him unconstitutionally a fair cross-section of jurors, specifically due to an underrepresentation of Black and Latino people. (Adelekan Mot. at 5-10.) As to Duren's first

---

[5] See U.S. District Court for the Southern District of New York Supplemental Juror Questionnaire, available at https://www.nysd.uscourts.gov/sites/default/files/pdf/Jury_Duty/Supplemental%20Juror%20Questionnaire.pdf.

prong, the parties do not dispute that Black and Latino people are "distinctive" groups in the community. (See Adelekan Mot. at 7;  Gov. Opp. at 10); accord United States v. Jackman, 46 F.3d 1240, 1246 (2d Cir. 1995) ("There is little question that both Blacks and Hispanics are distinctive group' in the community for purposes of this test." (cleaned up))

However, because Adelekan fails to make a showing under both Duren's second and third factors, his Sixth Amendment claim must be rejected.

As to Duren's second factor--whether the distinctive groups are fairly and reasonably represented in relation to the number of such persons in the community--Adelekan submits a declaration from Jeffrey O'Neal Martin, a mathematician and an expert on the study of jury data. (See Ex. A. to Adelekan Mot., Declaration of Jeffrey Martin ("Martin Decl."), dated, March 5, 2021 [dkt. no. 303-2].) Adelekan contends that Black and Latino people are significantly underrepresented based on Mr. Martin's analysis, which concludes that the absolute disparity for Black people in the Qualified Jury Wheel (that is, the wheel of persons who have been found qualified to serve as jurors) is 5.11% underrepresentation, and the absolute disparity for Latino persons is 9.03% underrepresentation. (Adelekan Mot. at 7-8 (citing Martin Decl. ¶¶ 32-33).)

17

The Court finds that Adelekan has failed to show the underrepresentation of these distinctive groups for the same reasons that other Courts have rejected these same statistics. Here, the relevant jury venire for comparison is the Manhattan master wheel because that is the jury pool that "bears the brunt of the defendant's allegations of systematic exclusion." See United States v. Schulte, 17 Cr. 548 (PAC), 2021 WL 1146094, at *4 (S.D.N.Y. Mar. 24, 2021).  For example, in United States v. Tagliaferro, No. 19 Cr. 472 (PAC), 2021 WL 1172502 (S.D.N.Y. Mar. 29, 2021), Judge Crotty reviewed precisely the same expert declaration and statistics that Adelekan proffers here, id. at *3 n.1.  In Taliaferro, the Court held that, as here, because the defendant alleged systemic exclusion regarding the Manhattan master wheel, the relevant community that should be used as a basis of comparison is comprised of "the counties that feed jurors to the Manhattan courthouse." Id.  As it did in Taliaferro, here the Government has submitted data showing that the absolute disparity when comparing the Master Wheel to the community population is 1.34% for Black people and 0.04% for Latino people, (See Ex. B. Gov. Opp. at 5, 15, 23 (citing Report in the Matter of United States of America v. Jimi Gilmore ("Siskind Report"), dated Mar. 12, 2021 [dkt. no. 326-2] ¶¶ 8, 30, 43.).  The Court in Taliaferro recognized that these disparities "fall well within the outer limits tolerated in past

18

Second Circuit cases." Tagliaferro, 2021 WL 1172502 at *3 n.1

(citing Biaggi, 909 F.2d at 677-78).  For the same reasons, the

Court finds that Adelekan has not shown sufficient

underrepresentation under Duren's second prong.

Furthermore, Adelekan's failure to make a showing under

Duren's third prong serves as an independent basis for rejecting

his constitutional fair cross section claim. See Tagliaferro,

2021 WL 1172502 at *3 n.1 ("The Duren framework is a conjunctive

test, meaning that each of its elements must be met[.]")

Adelekan appears to argue in his papers that the purportedly

increasing underrepresentation of Black and Latino as qualified

jurors demonstrates that these distinctive groups have been

systematically excluded from jury service.  The Court of Appeals

and other courts within the district have made amply clear that

a statistical disparity alone is not sufficient to make out a

fair cross section claim.  See e.g., Anderson v. Casscles, 531

F.2d 682, 685 (2d Cir. 1976) ("The law is clear that evidence of

mathematical disparity, without more, is insufficient to make

out a prima facie case of improper jury selection.").  Moreover,

Adelekan's assertion that the COVID-19 pandemic and varying

rates of infection and vaccination could exacerbate these

disparities is an "external force," not "due to the system of

jury selection itself," and thus cannot constitute systematic

exclusion.  See Rioux, 97 F.3d at 658.[6]  Accordingly, Adelekan's fair cross section claim fails for the independent reason that he has not made a showing under Duren's third prong.

### 2. JSSA Claim

Because Adelekan has failed to make out sufficiently a fair cross-section challenge under Duren and has not alleged any "substantial" violation of the JSSA, his JSSA claim fails for the reasons stated above.  See LaChance, 788 F.2d at 864 (2d Cir. 1986) ("[B]ecause the Duren test governs fair cross section challenges under both the Act and the sixth amendment, our discussion of the statutory challenge also disposes of his constitutional claim.")).

Accordingly, the branch of Mr. Adelekan's motion seeking to stay his trial is DENIED.

### B. Olajumoke's Motion in Limine [dkt. no. 299]

Defendant Olajumoke requests leave to supplement his motions in limine with specific objections to particular evidence, including "any portions of the charged conspiracy

---

[6] Adelekan points to no statistical evidence tending to show how any disparity would be exacerbated by the COVID-19 pandemic or varying vaccination rates.  As the Government points out, this is despite the fact that Adelekan should be aware, based on the reports that the Government has submitted in prior cases in response to the identical expert declaration that Adelekan proffers here, that the statistics appear to demonstrate the opposite: Black and Latino people are deferring service at a lower rate than non-Blacks and non-Hispanics.  (See Gov. Opp. at 26 (citing Siskind Report ¶ 42)).

other than those discrete aspects in which Mr. Olajumoke is alleged to have been involved." (Olajumoke Mot. at 4.)

The deadline for the parties to file affirmative motions in limine has come and gone. (See Order, dated Aug. 26, 2021 [dkt. no. 290]). The Government had made five discovery productions to Defendants, including to Mr. Olajumoke, in advance of that date. (Gov. Opp. at 28.) Allowing a defendant to file additional affirmative motions in limine regarding materials produced to him before the deadline for affirmative motions in limine would frustrate the whole point of this exercise, i.e., to resolve contested issues before trial.

Accordingly, Olajumoke's request to reserve the right to file a motion in limine based on any discovery that he had in his possession at the time of the motions in limine deadline is DENIED. To the extent Olajumoke wishes to file a motion in limine on the basis of materials that the Government produced after that date, Olajumoke must have brought any motion in limine promptly following the receipt of such materials.

## IV. Conclusion

For the reasons stated above, the parties' motions in limine are resolved as follows:

- Defendant Adelekan's motion [dkt. no. 303] to sever his case and to stay trial is DENIED.
- Defendant Olajumoke's motion [dkt. no. 299] seeking to preserve the right to seek to preclude in limine certain categories of evidence is DENIED as to evidence that the

21

Government produced to Defendants on or prior to September 13, 2021, and is <u>GRANTED</u> to the extent that Olajumoke and the Defendants who have joined in his motion seek to reserve their right to timely move <u>in limine</u> as to evidence produced by the Government after that date.

Because the Court's rulings on these motions <u>in limine</u> are made without the benefit of a developed trial record, they are subject to revision at trial if necessary.  See <u>Bowen</u>, 511 F. Supp. 3d at 446 ("Because a ruling on a motion <u>in limine</u> is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." (citation omitted)).

**SO ORDERED.**

Dated:      New York, New York
            October 15, 2021

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

22