UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff

          -against-

OLUWASEUN ADELEKAN et al.,

                    Defendants.

---

19 Cr. 291 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Defendants are charged in a six-count indictment in connection with their alleged participation in a scheme to defraud businesses and individuals using email scams designed to trick those victims into wiring money to bank accounts that the Defendants controlled.  Before the Court are the Government's motions _in limine_ seeking to admit or preclude various kinds of evidence.[1]  Defendants Oluwaseun Adelekan and Curlten Otidubor oppose certain of the Government's motions.[2]  Defendant Temitope Omotayo also moves _in limine_ to preclude the Government from introducing evidence of Mr. Omotayo's sister's alleged

---

[1] (_See_ Government's Motion _in Limine_ ("Gov. Mot."), dated Sept. 13, 2021 [dkt. no. 304]; Government's Memorandum in Further Support of its Motions _in Limine_ ("Gov. Reply"), dated Sept. 27, 2021 [dkt. no. 331].)

[2] (_See_ Oluwaseun Adelekan's Memorandum of Law in Opposition to the Government's Motions _in Limine_, dated Sept. 23, 2021 [dkt. no. 327]; Curlten Otidubor's Opposition to the Government's Motions _in Limine_ ("Otidubor Mot."), dated Sept. 23, 2021 [dkt. no. 325].)

1

involvement in the alleged conspiracy and other frauds.[3]  The Court's rulings on each motion are set forth below.

## I.   Background

Defendants Oluwaseun Adelekan, Olalekan Daramola, Solomon Aburekhanlen, Gbegna Oyeneyin, Abiola Olajumke, Temitope Omotayo, Bryan Eadie, Albert Lucas, Ademola Adebogun, Lucas Ologbenla, Adewole Taylor, and Curlten Otidubor (collectively, "Defendants") are charged in a six-count indictment for allegedly using false and misleading representations and omissions, including via email and text message, to induce victims to wire a total of more than $3.5 million to Defendants and other members of the scheme.  (See generally Fourth Superseding Indictment, [dkt. no. 296].)

Count one charges Defendants with conspiracy to commit wire fraud.  (Id. ¶¶ 1-6.)

Count two charges Defendants with conspiracy to commit money laundering.  (Id. ¶¶ 7-10.)

Counts three through six charge certain Defendants with aggravated identity theft:

- Count three charges defendants Adelekan and Eadie with aggravated identity theft for unlawfully using another person's social security number in attempting to obtain proceeds of a wire transfer.  (Id. ¶ 11.)

---

[3] (See Motion ("Omotayo Mot."), dated Oct. 14, 2021 [dkt. no. 357]; Government Opposition ("Gov. Omotayo Opp."), dated Oct. 15, 2021 [dkt. no. 360].)

- Count four charges defendants Olajumoke and Adebogun with aggravated identify theft for unlawfully using the name, place of business, and driver's license number of another person in attempting to obtain proceeds of a wire transfer. (Id. ¶ 12.)
- Count five charges defendants Omotayo and Eadie with aggravated identify theft for unlawfully using the name and employer of another person in attempting to obtain proceeds of a wire transfer. (Id. ¶ 13.)
- Count six charges defendant Oyeneyin with aggravated identify theft for unlawfully using a means of identification of another person in attempting to obtain proceeds of a wire transfer. (Id. ¶ 14.)

## II.  Legal Standard

"The purpose of a motion in limine is to allow a court to rule on the admissibility of potential evidence in advance of trial." Laureano v. City of New York, No. 17 Civ. 181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021) (quoting Gucci Am., Inc. v. Guess?, Inc., 858 F. Supp. 2d 250, 253 (S.D.N.Y. 2012)).  A court should exclude evidence on a motion in limine only when it is "clearly inadmissible on all potential grounds." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006) (citation omitted).  "Because a ruling on a motion in limine is 'subject to change as the case unfolds,' [the] ruling constitutes a preliminary determination in preparation for trial." United States v. Bowen, 511 F. Supp. 3d 441, 446 (S.D.N.Y. 2021) (cleaned up).

### III. Discussion

1. **The Government's Motions [dkt. no. 304]**

The Government moves <u>in limine</u> to: (i) admit statements made by co-conspirators in furtherance of the charged wire fraud and money laundering conspiracies, (ii) preclude any evidence and arguments concerning prior good acts of the Defendants, (iii) preclude any evidence and arguments that the victims of the wire fraud conspiracy are to blame for having acted negligently or gullibly, (iv) preclude the defendants from presenting a duress defense unless they proffer evidence to support that defense, and (v) preclude any evidence and arguments regarding the defendants' family backgrounds, immigration status, or any other personal factors unconnected to guilt. (Gov. Mot. at 5-18.)

#### a. Co-Conspirator Statements

The Government moves <u>in limine</u> to admit statements made by certain purported co-conspirators. (Gov. Mot. at 5-12.) Specifically, the Government intends to introduce text message communications between uncharged co-conspirators and the Defendants themselves and with third-party bank employees or victims on the basis that they are admissible as statements made by co-conspirators in furtherance of the charged wire fraud and money laundering conspiracies. (<u>Id.</u> at 5-6.)

### i. Applicable Law

### 1. Co-Conspirator Statements

Under Fed. R. Evid. 801(d)(2)(E), "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E). The Court must find the following by a preponderance of the evidence to admit a statement under Fed. R. Evid. 801(d)(2)(E): "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy."  United States v. Tracy, 12 F.3d 1186, 1196 (2d Cir. 1993) (citations omitted); see also Bourjaily v. United States, 483 U.S. 171, 176 (1987) (holding that a "preponderance of the evidence" standard applies).

"In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."  United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014). "Although Rule 801(d)(2)(E) requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the

5

statement is made also be a member." United States v. James, 712 F.3d 79, 106 (2d Cir. 2013).  "Where statements are made in the course of an existing conspiracy in which the defendant later joins, those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made, on the theory that he assumes the risk for what has already happened in the scheme." United States v. Farhane, 634 F.3d 127, 161 n.35 (2d Cir. 2011) (citations and quotation marks omitted).  "While the district court may consider the hearsay statement itself to determine the existence of a conspiracy . . . 'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" United States v. Padilla, 203 F.3d 156, 161 (2d Cir. 2000) (quoting United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).

As to the "in furtherance" requirement, "[t]he touchstone . . . is that the statement be designed to promote the accomplishment of the conspiracy's goals." United States v. Johnson, 469 F. Supp. 3d 193, 212 (S.D.N.Y. 2019) (quoting United States v. Saneaux, 365 F. Supp. 2d 493, 500 (S.D.N.Y. 2005).

### 2. Relevance and Unfair Prejudice

Evidence must be relevant to be admissible.  See Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to

make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  That hurdle is a "very low" one.  United States v. White, 692 F.3d 235, 246 (2d Cir. 2012).  Indeed, "[e]vidence need not be conclusive in order to be relevant;" "[a]n incremental effect is sufficient."  United States v. Certified Env't Servs., Inc., 753 F.3d 72, 90 (2d Cir. 2014) (ellipsis omitted).  However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "[T]he Court has 'broad discretion to balance probative value against possible prejudice' under Rule 403."  United States v. Elmowsky, 501 F. Supp. 3d 236, 239 (S.D.N.Y. 2020) (quoting United States v. Bermudez, 529 F.3d 158, 161 (2d Cir. 2008)).

### ii. Application

As to Fed. R. Evid. 801(d)(2)(E)'s first requirement that there be a conspiracy, the Government attests that the trial evidence will show that, between in or about July 2016 and April 2019, the Defendants and others conspired to defraud victims into wiring money, and that the money wired by victims often was

7

sent to bank accounts opened and maintained by the Defendants themselves or by uncharged co-conspirators.  (Gov. Mot. at 8-9.)

Adelekan argues that the Government actually discusses three separate conspiracies: (1) a business email compromise conspiracy; (2) a romance conspiracy; and (3) a Russian oil conspiracy.  (Adelekan Opp. at 3-4.)  He asserts that the Government has only described Adelekan's involvement in the business email conspiracy and thus the Government must proffer evidence showing existence of the business email conspiracy and that the testifying co-conspirator was specifically part of that scheme.  Similarly, Otidubor argues that the alleged schemes were not a single conspiracy but featured different people, at different times, utilizing different methods.  (Otidubor Opp. at 3-4.)

The Government sufficiently has shown at this stage the existence of single conspiracy.  Additionally, the fact that there was some variation of the nuts and a bolts of the fraud at the heart of the conspiracy does not make each style of fraud an independent conspiracy.  Although "[a] single scheme to defraud may involve a multiplicity of ways and means of action and procedure," "[m]ere details may be changed and the scheme remain the same."  United States v. Crosby, 294 F.2d 928, 945 (2d Cir. 1961) (cleaned up).  And, in any case, "in proving the existence of a conspiracy . . . proof of multiple small conspiracies may

suffice for purposes of Rule 801(d)(2)(E)."  United States v. Ulbricht, 79 F. Supp. 3d 466, 484 (S.D.N.Y. 2015).

Neither does Fed. R. Evid. 403 render co-conspirator statements about the Russian Oil scheme or romance scheme inadmissible as to Adelekan, as the Court finds that those schemes are not "any more sensational or disturbing than the crimes with which" Adelekan has been charged with respect to the business email scheme.  See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

As to whether the conspiracy included the Defendants--i.e., the parties against whom the co-conspirator statements will be offered--the Government has provided specific examples that Adelekan, Otidubor, and the other Defendants opened or maintained bank accounts and communicated with others to facilitate wire transfers that were allegedly fraudulent.  (See Gov. Mot. at 4-5, 9-10; Gov. Reply at 4-5.)  As to the alleged co-conspirator statements themselves, Otidubor argues that what the Government has proffered thus far is not specific enough. He asserts that the Government has offered categories of communications that it will seek to introduce, which is insufficient to qualify those statements now for the co-conspirator exception to the hearsay rule.  (Otidubor Opp. at 1-2.)  In its briefing, the Government has provided three specific types of statements that it will seek to introduce: (i)

statements co-conspirators made to victims to defraud them, (ii) statements co-conspirators made to defendants discussing the fraudulent wire transfers and how to disburse the funds, and (iii) statements co-conspirators made to banks to check on the status.  (Gov. Mot. at 9-12; Gov. Reply at 10-11.)

The Court finds that statements within these three categories likely will be admissible as co-conspirator statements.  As to the first category (statements that co-conspirators made to victims) and the third category (statements co-conspirators made to banks), these statements may be admitted on the basis that they prompted the victim "to respond in a way that promotes or facilitates the carrying out of a criminal activity," i.e., by wiring money or confirming the status of the money that was wired.  See United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990).  As to the second category (statements co-conspirators made to Defendants discussing the fraudulent wire transfers and how to disburse the funds), the Government specifically references statements made by E.A., an uncharged alleged co-conspirator, to Adelekan, in which E.A. gives Adelekan orders.  Those types of statements may be admissible because they "promote the criminal activities of the [conspiracy] by enforcing discipline among its members."  See United States v. Simmons, 923 F.2d 934, 945 (2d Cir. 1991);

United States v. Torres, 435 F. Supp. 3d 526, 532 (S.D.N.Y. 2020).

Finally, Adelekan argues that the Court should require the Government to call the uncharged alleged co-conspirator, E.A., as a witness at trial to admit his statements into evidence. The Government has proffered a number of communications between Adelekan and E.A., including April 23, 2019 text messages between E.A. and Adelekan about a bank account that E.A. opened that was shut down on account of a suspected fraud, among other statements.  (Gov. Mot. at 11-12.)  The Court finds that the Government is not required to call E.A. as a witness to render admissible these statements from E.A. on the basis that they are unreliable, as there can be "no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court-statement."  See Bourjaily, 483 U.S. at 183.  E.A. is not required to take the stand for his out-of-court statements described in the Government's opening brief to be admitted as evidence.

Accordingly, the Court grants the Government's motion with respect to the three categories of statements it identifies in its briefing, provided that each statement admitted meets the

test for Rule 801(d)(2)(E).[4]  See Torres, 435 F. Supp. 3d at 532.
Defendants may object to the admission of particular statements
as not properly within one of these three categories.

### b. Non-Criminal Transactions

The Government seeks to preclude Defendants from
introducing specific non-criminal money transfers into and out
of their bank accounts as evidence that they did not knowingly
use their bank accounts as conduits for the flow of fraud
proceeds.  (Gov. Mot. at 12-14.)

### i. Applicable Law

Under Federal Rule of Evidence 404(b), "[e]vidence of any
other crime, wrong, or act is not admissible to prove a person's

---

[4] Adelekan voices his concern that admitting the alleged co-
conspirator statements "subject to connection" may taint jury
deliberations if they are heard and later stricken.  (Adelekan
Opp. at 4.)  The Court has considered this argument and finds no
reason to deviate from general procedure here.  See United
States v. Ulbricht, 79 F. Supp. 3d 466, 483 (S.D.N.Y. 2015)
("[S]tatements proffered as coconspirator statements may be
admitted in evidence on a conditional basis, subject to the
later submission of the necessary evidence of those four
prerequisites."  (quoting Tracy, 12 F.3d at 1196)); see also
United States v. Fallas, 09 CR. 342 (LAP), 2010 WL 3468605, at
*4 (S.D.N.Y. Aug. 19, 2010) ("In the Second Circuit, statements
proffered into evidence as co-conspirator statements are
admitted on a conditional basis; if the Government is unable to
prove the prerequisites for admission under Federal Rule of
Evidence 801(d)(2)(E) at the close of its evidence, then the
jury will either be instructed to disregard the statements or,
if the statements are so prejudicial that a limiting instruction
will not cure the harm, the court will declare a mistrial.").

character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). That same evidence is admissible, however, if introduced for a different purpose, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If the evidence is "offered for a proper purpose under Rule 404(b)," it admissible if it is "relevant to a disputed issue" and its "probative value . . . is not substantially outweighed by the danger of unfair prejudice."[5]

### i. Application

The Government asserts that Defendants' offering evidence that non-criminal financial transactions show that they lacked criminal intent is inadmissible under Fed. R. Evid. 404(b) and, in any case, is not relevant under Fed. R. Evid. 402. Adelekan and Otidubor counter that admissions of other transactions are not character evidence but rather central to the jury's assessment of Defendants' knowledge and intent. (Adelekan Opp. at 9-10; Otidubor Opp. at 5-7.)

---

[5] United States v. Frazier, No. S6 15 Cr. 153 (VSB), 2019 WL 761912, at *5 (S.D.N.Y. Feb. 21, 2019) (cleaned up); see also United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011) ("This Circuit follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402.").

Here, the Court finds that evidence of non-criminal money transaction may be offered for a proper purpose under Rule 404(b).  The rule specifically enumerates "intent" and "knowledge" as permitted uses for prior act evidence. Fed. R. Evid. 404(b)(2). The fact of non-criminal transactions permissibly may be used to "show the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Giovinco, 382 F. Supp. 3d 299, 301 (S.D.N.Y. 2019) (internal quotation marks omitted).  Evidence of non-criminal transactions may be admitted because its bears on Defendants' knowledge and intent.  However, at this stage, the Court cannot determine, absent a proffer by Defendants, whether such evidence may in fact be inadmissible under Fed. R. Evidence 403.

Accordingly, the Court will reserve judgment on the Government's motion to preclude Defendants from introducing evidence of specific, non-criminal money transfers.  Defendants shall give 24 hours' notice of their intent to offer such evidence at trial so that the Court may issue a ruling.

### c. Victim Fault

The Government seeks to preclude Defendants from offering evidence or argument that any of the alleged victims might have discovered the fraud if they had probed further or not been so gullible.  (Gov. Mot. at 14-15.)  Adelekan states in his

opposition that he does not intend to offer such evidence, (see
Adelekan Opp. at 1 n.1), and Otidubor states that this category
of evidence is not among those applicable to him, (see Otidubor
Mot. at 1).  Although the Government's motion likely is moot, as
no other Defendant has opposed the Government's motion to
preclude this kind of evidence, the other Defendants have not
affirmatively stated so.  Accordingly, the Court will briefly
address the Government's motion.

The Court agrees with the Government that evidence of or
arguments concerning the gullibility of victims are irrelevant.
The pertinent inquiry here is the Defendants' intent, not the
state of mind of those who were allegedly defrauded.
Accordingly, such evidence does not pass the test for relevance,
see Fed. R. Evid. 401, and, in any case, would be inadmissible
for its substantial risk of confusion and prejudice, see Fed. R.
Evid. 403.  The Court of Appeals routinely has rejected a
gullible victim defense for wire-fraud charges.  See United
States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007) (holding, in
the context of prosecution for violation of 18 U.S.C. § 1341,
that "the victim's gullibility . . . is not relevant to the
inquiry as to whether the defendants were properly convicted."
(quoting United States v. Thomas, 377 F.3d 232, 242-43 (2d Cir.
2004)); United States v. Weaver, 860 F.3d 90, 96 (2d Cir. 2017)
(holding, in the context of 18 U.S.C. § 1343, that "[f]raudsters

may not escape criminal liability for lies told to induce gullible victims"). The Court will do the same here.

Accordingly, the Government's motion to preclude evidence of victims' negligence or gullibility is GRANTED.

### d. Duress Defense

The Government seeks to preclude Defendants from asserting duress defenses by offering evidence or argument that Defendants were pressured by other co-defendants to engage in the criminal conduct alleged in the indictment.[6]  (See Gov. Mot. at 15-17.)

The elements of a duress defense are: "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity." United States v. Pestana, 865 F. Supp. 2d 357, 361 (S.D.N.Y. 2011) (quoting United States v. Gonzalez, 407 F.3d 118, 122 (2d Cir. 2005), aff'd sub nom. United States v. Ortiz, 525 F. App'x 41 (2d Cir. 2013) (summary order).  "A defendant is entitled to a jury instruction regarding duress only if he makes some showing on each element of the defense." United States v. Zayac, 765 F.3d 112, 120 (2d Cir. 2014). At this stage,

---

[6] As with evidence regarding victim gullibility, Adelekan states that he does not intend to raise a duress defense, (see Adelekan Opp. at 1 n.1), and Otidubor states that this category of evidence is not applicable to him, (see Otidubor Mot. at 1).

Defendants have either disclaimed such a defense or made no
attempt to make a showing as to any of these elements.
Defendants therefore are precluded from introducing evidence
that they were pressured by other co-defendants to engage in the
conduct alleged in the indictment.

Accordingly, the Government's motion as to evidence in
support of any duress defense is GRANTED.

### e. Backgrounds and Person Factors

The Government moves to preclude Defendants from offering
evidence or argument concerning their family backgrounds,
immigration status, or any other similar factors and from
mentioning such subjects in their opening statements.  (Gov.
Mot. at 17-18.)

The Government argues that Defendants should be precluded
from offering evidence or argument concerning the punishment or
consequences of conviction, and specifically any immigration
consequences.  (Gov. Mot. at 18.)  Adelekan does not
specifically object to the exclusion of this evidence but
asserts that he should be permitted to introduce evidence about
his automobile export business, including his business
relationship with individuals abroad who place the orders with
him, if he takes the stand. [7]  (Adelekan Opp. at 11.)  In its

---

[7] Otidubor does not object to the Government's motion.  (Otidubor
Mot. at 1 n.1.)

17

reply, the Government states that it does not seek to preclude a defendant's himself testifying briefly about his family and employment background.  (Gov. Reply at 16.)  The Government does, however, oppose testimony about the penalties a Defendant may face if convicted, his immigration status, and any possible immigration consequences that may follow a conviction. (<u>See</u> Gov. Mot. at 17-18.)

First, the Government and Adelekan appear to agree that it would be improper for the jury to hear about any potential immigration consequences of a guilty verdict.  The Government is correct that the Defendants' immigration statuses do not bear on the charged crimes and thus are properly excluded.

As to the fact of Adelekan's profession, this evidence is admissible in the event that Adelekan takes the stand.  Although not directly relevant to the charged conduct, this is the type of background information that can "scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding" because it tells "the jury something about the defendant as a person, and his experience in life." <u>United States v. Blackwell</u>, 853 F.2d 86, 88 (2d Cir. 1988) (citation omitted).

Accordingly, the Government's motion to preclude information about Defendants' background is <u>GRANTED</u> as to evidence concerning the punishment or immigration consequences

of conviction and <u>DENIED</u> as to general background information
about Adelekan's profession, in the event that Adelekan takes
the stand.

### 2. **Omotayo's Motion [dkt. no. 357]**

Defendant Omotayo seeks to preclude the Government from
introducing evidence of Mr. Omotayo's sister's (the "Sister")
alleged involvement in the charged conspiracy.  (<u>See</u> Omotayo
Mot. at 1.)

Omotayo objects to the evidence on the grounds of hearsay
and relevance, citing Fed. R. Evid. 401 and 403.  (<u>Id.</u> at 1
("[T]he fact that Mr. Omotayo's sister may be involved in
similar fraudulent behavior (presumably in Nigeria) is
irrelevant and of no "consequence in determining the action.")
None of these grounds merits preclusion.

First, the proffered evidence does not constitute hearsay.
The Government notes that it expects a cooperating witness to
testify that he participated in the charged crimes and that,
during the course of this criminal conduct, both Defendants
Omotayo and Adelekan told him that the Sister had "connected
them with unindicted co-conspirators—referred to by members of
the conspiracy as 'connects'—with whom the defendants agreed to
commit wire fraud and money laundering."  (Gov. Omotayo Opp. at
1.)  The Government also plans to introduce into evidence a
WhatsApp conversation "between Adelekan and [the cooperating

witness] during which Adelekan told [the cooperating witness]

that the 'connect' for a particular incident of wire fraud was

'[Otomayo's] sis or the guy I met in Nigeria.'"   (Id.)    The

statements of Omotayo and Adelekan about the Sister's having

acted as a "connect" are statements about each of their criminal

conduct and the criminal conduct of a co-conspirator, the

Sister.  Those statements and the statements to the cooperating

witness regarding the Sister's status as a possible "connect"

are all in furtherance of the conspiracy in that they inform

Adelekan, Omotayo, and the cooperating witness of the identity

and activities of a co-conspirator, the Sister, and of the

status of the conspiracy.  Thus, they are admissible.  See Fed.

R. Evid. 801(d)(2)(E).

Adelekan's and Omotayo's statements are also probative of

their knowledge of the charged conspiracies in that they

demonstrate their knowledge of the role of the Sister within the

conspiracy.  The proffered evidence is inextricably intertwined

with and direct evidence of the Defendants' and the cooperating

witness' involvement in the charged conspiracy.  Thus, the

statements are admissible.

There is also no merit to Defendant Omotayo's argument that

the proffered evidence would unduly prejudice him.  Evidence

that the Sister was involved in the same criminal conduct as her

brother is no more or less sensational or disturbing than the

charged crimes.  See United States v. Brettschneider, 832 F.
Appx 14, 19 (2d Cir. 2020) (summary order).

Finally, to the extent that Defendant Omotayo is concerned
that the jury will draw an improper inference of guilt from the
proffered evidence because of his relation to his Sister, he may
request an appropriate cautionary instruction.

Accordingly, Defendant Omotayo's motion to preclude evidence
of his sister's alleged involvement in the charged conspiracy is
DENIED.

## IV.  Conclusion

For the reasons stated above, the Government's motions
[dkt. no. 304] are resolved as follows:

- The Government's motion to admit statements made by alleged
  co-conspirators is GRANTED with respect to the categories
  of statements it identifies in its briefing, provided that
  each statement admitted meets the test for Rule
  801(d)(2)(E).
- The Court reserves judgment on the Government's motion to
  preclude Defendants from introducing evidence of specific,
  non-criminal money transfers.
- The Government's motion to preclude evidence of victims'
  negligence or gullibility is GRANTED.
- The Government's motion to preclude evidence in support of
  a duress defense is GRANTED.
- The Government's motion to preclude information about
  Defendants' background is GRANTED as to evidence concerning
  the punishment or immigration consequences of conviction
  and DENIED as to general background information about
  Adelekan's profession, in the event that Adelekan takes the
  stand.

Defendant Omotayo's motion to preclude evidence of his sister's alleged involvement in the charged conspiracy [dkt. no. 357] is <u>DENIED</u>.

**SO ORDERED.**

Dated:     New York, New York
           October 18, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge